UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-00048JVS(JDEx) | Date | March 18, 2019 |
| Title | Paul Gordy v CareMore Health Plan, et al | | |

Present: The Honorable     James V. Selna

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     [IN CHAMBERS] ORDER DENYING MOTION TO REMAND

Plaintiff Paul Gordy ("Gordy") filed his Complaint in the Superior Court of California for the County of Orange against Defendants CareMore Health Plan ("CareMore"), Orange County Global Medical Center ("Global Medical"), Frank Nastanski, M.D. ("Dr. Nastanski"), and Does 1 through 50, alleging negligence and insurance bad faith. (Docket No. 1-1). CareMore removed the case to this Court based on federal officer jurisdiction. (Docket No. 1). Gordy now moves to remand the case back to state court. (Docket No. 14). CareMore opposes the motion. (Docket No. 15). Gordy filed his reply. (Docket No. 16).

For the following reasons, the Court **DENIES** the motion to remand.

## I. Background

### A. Factual Allegations

In December 2017, Gordy was having joint pain in his right foot and decided to soak it in a tub of hot water, but the hot water scalded his foot. (Docket No. 1-1 at ¶ 7). After a visit to the emergency room, Gordy underwent surgery with Dr. Nastanski, one of CareMore's affiliated doctors. Id. at ¶ 10. Gordy's foot subsequently became infected and gangrenous. Id. at ¶ 17. In January 2018, Gordy consulted with a non-CareMore doctor, Dr. Reed, who recommended immediate surgery. Id. at ¶ 18. CareMore did not authorize the surgery, however, because Dr. Reed was not under contract with CareMore. Id. at ¶ 19. Instead, CareMore sent a nurse to examine Gordy and later approved him for hyperbaric treatment. Id. at ¶¶ 19–20. Gordy elected to pay for the surgery with Dr.

Reed out-of-pocket. Id. at ¶ 20. Following that surgery, CareMore approved Gordy for home-wound care and advised him to see his personal care physician as needed. Id. at ¶ 22. In March 2018, Dr. Reed performed another surgery on Gordy to remove dry gangrene from the wound and started Gordy on a course of Zyvox, an antibiotic, based on the medical recommendation of an infectious disease specialist. Id. at ¶ 23. When the Zyvox ran out, CareMore did not authorize Gordy to renew the prescription and instead authorized a different drug for treatment. Id. at ¶ 24. In April 2018, Gordy consulted with another non-CareMore doctor, Dr. Armstrong, at USC. Id. at ¶ 25. Dr. Armstrong sought to treat the leg, but CareMore would not authorize treatment because Dr. Armstrong was not affiliated with CareMore. Id. CareMore did, however, authorize a consultation at Lakewood Hospital. Id. Gordy later sought to obtain more Zyvox, but CareMore again did not authorize the drug. Id. at ¶ 27. The condition of Gordy's foot worsened, and, to prevent the gangrene from spreading, doctors amputated Gordy's lower leg. Id. at ¶ 27.

### B. Statutory Background

The court, in Vaccarino v. Aetna, Inc., No. EDCV1802349JGBSHKX, 2018 WL 6249707, at *1 (C.D. Cal. Nov. 29, 2018), recently discussed the relevant statutory scheme:

> The Medicare Act, 42 U.S.C. §§ 1395 et seq., established a federally subsidized health insurance program ("Medicare") for elderly and disabled persons. The Secretary of Health and Human Services ("Secretary") administers Medicare through the Centers for Medicare and Medicaid Services ("CMS"). Medicare consists of four main sections: Parts A and B, which provide traditional fee-for-service coverage; Part C (relevant here), which establishes the Medicare Advantage ("MA") program; and Part D, which provides prescription drug coverage. Under the MA program, beneficiaries have the option to choose a private health insurance plan administered by a Medicare Advantage Organization ("MAO"), like [CareMore]. MAOs contract with CMS to provide MA plans to qualified beneficiaries. The Contract and CMS regulations provide

the rules and considerations an MAO must follow in determining whether to allow benefits.

Vaccarino, 2018 WL 6249707, at *1 (C.D. Cal. Nov. 29, 2018) (citations omitted).

**II.    Legal Standard**

The federal officer removal statute provides:

> (a) A civil action . . . that is commenced in a State court and that is against or directed to [the following] may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>> (1) The United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . .

28 U.S.C. § 1442 (emphasis added). Thus, a defendant seeking removal under § 1442 bears the burden of showing that: (1) it is a "person" within the meaning of the statute; (2) it acted under the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) that there is a causal nexus between its actions and plaintiff's claims; and (4) it can assert a colorable federal defense. See Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego, 865 F.3d 1237, 1244 (9th Cir. 2017).

"Federal officer removal is an exception to the general presumption against removal jurisdiction. This is so because the federal government can act only through its officers and agents, but it would be difficult for the government to find anyone to act on its behalf if it did not guarantee its officers and agents access to a federal forum." Vaccarino, 2018 WL 6249707, at *5 (citing Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006)). Accordingly, where federal

officers or their agents seek a federal forum, courts "are to interpret § 1442 broadly in favor of removal." Durham, 445 F.3d at 1252.

### III. Discussion

Plaintiff argues that removal is improper because (1) CareMore has not established that it was acting under the direction of a federal officer when engaging in the conduct that gave rise to the claim against it; (2) CareMore has not established a causal nexus between the actions it took pursuant to a federal officer's direction; and (3) CareMore has not raised a colorable defense.[1] The Court addresses each of Gordy's arguments in turn.

#### A.　Acting Under a Federal Officer

"The words 'acting under' are broad, and [the Supreme Court] has made clear that the statute must be 'liberally construed.'" Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 147. "For a private entity to be 'acting under' a federal officer, the private entity must be involved in 'an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" Goncalves v. Rady Children's Hosp. San Diego, 865 F.3d 1237, 1245 (9th Cir. 2017) (quoting Watson, 551 U.S. at 152). However, such assistance "does not include simply complying with the law." Watson, 551 U.S. at 152, (emphasis original). "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. Id. at 153. "When a company complies with a regulatory order, it does not ordinarily create a significant risk of state-court 'prejudice.'" Id. at 152. However, government contractors may come within the terms of the statute if "[t]he assistance [they] provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." Id. at 153. One factor courts consider in this analysis is whether the defendant was "perform[ing] a

---

[1] Gordy also argues in his moving papers that CareMore has not established that it is a "person" under § 1442. (Docket No. 14 at 3). However, Gordy has since conceded on this point. (See Docket No. 16 at 1 ("CareMore has established one of the necessary four elements of the federal-officer removal statute—namely, that it is a corporation and therefore qualifies as a "person.")).

job that, in the absence of a contract with a private firm, the Government itself would have had to perform." Id. at 154.

There is no binding authority on the issue of whether MAOs administering Part C benefits are "acting under" CMS, and are thus entitled to § 1442 removal. CareMore urges the Court to follow the reasoning in a recent Central District case, Inchauspe v. Scan Health Plan, No. 217CV06011CASJCX, 2018 WL 566790, at *1 (C.D. Cal. Jan. 23, 2018).

In Inchauspe, the plaintiff sued a MAO and others for bad faith, negligence, breach of contract, and other claims arising from the allegedly improper denial of medically necessary acute rehabilitation services and substandard care the plaintiff received in two nursing facilities. Inchauspe, 2018 WL 566790, at *1. In analyzing whether the MAO was "acting under" CMS, the court "agree[d] with the majority of district courts," holding MAOs are "acting under" CMS because MAOs "help CMS 'fulfill [a] basic governmental task. Absent MA organizations . . . , CMS would be obligated to administer Medicare benefits through Parts A and B to those individuals who currently elect Part C coverage. Thus, [a MAO's] activities 'involve an effort to assist, or to help carry out, the duties or tasks of' CMS in a manner much more significant than "simply complying with the law." Id. at *5 (emphasis original).[2] The court also noted, that "[i]n an unpublished opinion, the Sixth Circuit adopted a contrary view, finding that 'the relationship between CMS and MAOs is not so unusually close that [a MAO] may wield the officer-removal statute.' Ohio State Chiropractic Ass'n v. Humana Health Plan Inc., 647 Fed. Appx. 619, 621–23 (6th Cir. 2016)." Id. at *5 n.1. However, "in light of the Supreme Court's guidance in Watson that the term "acting under" should be given a liberal construction," the court declined to follow Ohio State. Id.

Gordy relies on a Central District case that granted the plaintiff's motion to remand. In N.G. v. Downey Reg'l Med. Ctr., 140 F. Supp. 3d 1036 (C.D. Cal. 2015), the defendant removed a medical malpractice case to federal court based on the federal officer removal statute and its role as a provider of medical services to Medicare patients. Id. at 1038. The court granted the plaintiff's motion to remand because defendant hospital was not—in providing direct medical care—performing

---

[2] See also Body & Mind Acupuncture v. Humana Health Plan, Inc., No. 1:16CV211, 2017 WL 653270, at *5 (N.D.W. Va. Feb. 16, 2017) (collecting cases).

a task that, in the absence of a contract with a private firm, the government would itself have to perform. Id. at 1040 ("Defendant cannot claim the government is relying on Defendant to step into the government's shoes to perform a task the government normally reserves for itself. In other words, the government is not outsourcing a government task to Defendant and overseeing Defendant's conduct."). Downey is distinguishable from the case at hand, however, because CareMore, unlike the defendant in Downey, is not simply providing medical services to Medicare patients. Rather, CareMore makes Medicare benefit determinations pursuant to criteria established by CMS.

Absent persuasive arguments set forth by Gordy, the Court agrees with the reasoning in Inchauspe. By making Medicare benefit determinations and administering Medicare benefits, CareMore assists and helps CMS carry out a governmental task in a significant way, such that the "arising under" prong of § 1442 is met.

B. Causal Nexus

The "hurdle erected by [the causal-connection] requirement is quite low." Isaacson v. Dow Chem. Co., 517 F.3d 129, 137 (2d Cir. 2008). "[T]he statute does not require that the prosecution must be for the very acts which the officer admits to have been done by him under federal authority. It is enough that his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution." Maryland v. Soper, 270 U.S. 9, 33 (1926). Thus, CareMore need only show that the challenged acts "occurred because of what [it] was asked to do by [CMS]." See Isaacson, 517 F.3d at 137.

Here, Gordy requested for CareMore to authorize medical treatments and prescription medication, which CareMore did not do. (Docket No. 1-1). This meets the low bar that the causal-connection prong requires. CareMore's acts under CMS pertain to the administration, coverage determination, and provision of Medicare benefits. See C.F.R. §§ 422.503, 422.504. Gordy's lawsuit is a direct challenge to CareMore's decisions in administering his Medicare benefits and determining coverage for his requested services. Thus, Gordy's claims arise from what CareMore was asked to do by CMS.

      C.     Colorable Defense

      "In construing the colorable federal defense requirement, [the Supreme Court has] rejected a 'narrow, grudging interpretation' of the statute." Jefferson Cty., Ala. v. Acker, 527 U.S. 423, 431 (1999). It is therefore not required that the removing defendant "virtually to 'win his case before he can have it removed.'" Id.

      CareMore argues that express preemption under the Medicare Prescription Drug Improvement and Modernization Act ("MMA") is a colorable defense to Gordy's claims. (Docket No. 15 at 9–12). However, the scope of the MMA's express preemption provision with respect to state law claims remains an open question in the Ninth Circuit.

      CareMore asserts that "[t]he Ninth Circuit, in Uhm v. Humana, Inc., 620 F.3d 1134, 1156–58 (9th Cir. 2010), as well as other courts, have held that the MMA expressly and broadly preempts state common and statutory law based on conduct subject to the MMA and its regulations." (Docket No. 15 at 10). In Uhm, the Ninth Circuit affirmed the lower court's dismissal on expressed preemption grounds. Uhm, 620 F.3d at 1152–55. Specifically, the Ninth Circuit found that the plaintiffs' claims were based on promotional materials, subject to specific Medicare regulations approved by CMS. Id. at 1157. Under those circumstances, the court concluded that "[w]ere a state court to determine that [defendant's] marketing materials constituted misrepresentations resulting in fraud or fraud in the inducement, it would directly undermine CMS's prior determination that those materials were not misleading." Id. However, the court did not hold that the MAA preempts all state common law claims against MAOs, only that the MAA preempts "at least some common law claims." Id. at 1155.

      At least two California Courts of Appeal have held that the MAA's preemption provision only applies to positive state enactments and not common law claims. See Cotton v. Starcare Med. Grp., Inc., 183 Cal. App. 4th 437, 450 (2010); Yarick v. PacifiCare of California, 179 Cal. App. 4th 1158, 1165 (2000). However, California's Second District Court of Appeals found that the MAA covers more than positively enacted state laws. Roberts v. United Healthcare Services, Inc., 2 Cal. App. 5th 132, 145–146 (2016).

Taken together, Cotton, Yarick, Roberts, Uhm and its progeny (which similarly reach divergent conclusions) suggest that some, but not all state law claims are preempted by the MAA.

Thus, whether CareMore has raised a colorable defense is ambiguous. Ordinarily, in considering motions to remand, courts must "strictly construe the removal statute against removal jurisdiction," and resolve "any doubt as to the right of removal" in favor of remanding the case to state court. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.1992). However, the question of federal officer jurisdiction is an exception to the presumption against removal. Accordingly, because it is the duty of the Court "to interpret §1442 broadly in favor of removal," Durham, 445 F.3d at 1252, the Court finds, without deciding, that express preemption to Gordy's claims is a colorable defense.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** the motion to remand.

**IT IS SO ORDERED.**

:   0

Initials of Preparer    lmb