JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-00048 JVS (JDEx) | Date | 5/15/2020 |
| Title | Paul Gordy v. CareMore Health Plan, et al | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS]** Minute Order Regarding Motion to Remand and Motion to Dismiss

    Before the Court is Defendant Orange County Global Medical Center's ("OCGMC") motion to remand this action to state court. ECF No. 57. No other party has responded to the motion. The Court deems the failure to oppose the motion as consent to the granting of the motion. See Local Rule 7-9 (requiring the filing of an opposition brief or a statement of non-opposition no later than 21 days before hearing date); Local Rule 7-12 (failure to file an opposition may be deemed consent to the granting of a motion). Further, as set forth below, the Court also considers the motion on its merits.

    Also before the Court is Defendant Charles Holzner, M.D.'s ("Dr. Holzner") motion to dismiss. ECF No. 58.

    For the following reasons, the Court **GRANTS** the motion to remand and declines to rule on the pending motion to dismiss. The Court further finds that oral argument would not be helpful on this matter and vacates the May 18, 2020, hearing. Fed. R. Civ. P. 78; L.R. 7-15.

## I. BACKGROUND

    Plaintiff Paul Gordy ("Gordy") filed his initial complaint in the Superior Court for the State of California for the County of Orange (Case No. 30-2018-01036639-CU-IC-CXC). See Compl., ECF No. 1-1. The action was removed to this district by Defendant

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-00048 JVS (JDEx)    Date  5/15/2020

Title  Paul Gordy v. CareMore Health Plan, et al

CareMore Health Plan[1] ("CareMore") on January 9, 2019, under federal officer jurisdiction. See Removal, ECF No. 1. Gordy moved to remand the action and the Court denied the motion. See ECF No. 22.

    The First Amended Complaint ("FAC") filed on March 18, 2020 alleges the following. Gordy received his medical insurance and health care through enrollment in a CareMore Reliance plan. FAC, ¶ 10, ECF No. 49. On December 9, 2017, Gordy burned his foot in scalding water. Id. ¶ 9. Three days later, he went to the emergency room at Placentia-Linda Hospital ("PLH"), where he was diagnosed with second-degree partial thickness epidermal burns. Id. PLH referred Gordy to OCGMC based on Gordy's enrollment in a CareMore health plan because OCGMC contracted with CareMore to provide medical services. Id. ¶ 11.

    At OCGMC, Gordy was treated by Defendant Dr. Frank Nastanski ("Dr. Nastanski"), who diagnosed Gordy with third-degree full-thickness epidermal burns and recommended immediate surgery for debridement and a cadaver skin graft. Id. ¶ 12. However, Dr. Nastanski's diagnosis was incorrect—Gordy had suffered second degree burns. Id. ¶ 13. Therefore, the surgery recommended by Dr. Nastanski was medically unnecessary for Gordy's burns and risked limb-threatening complications. Id. ¶ 14. Gordy was also taking anti-rejection medications increasing his susceptibility to infections and suffered from peripheral arterial disease, hindering his ability to heal. Id. Dr. Nastanksi failed to consider these complications and run the appropriate test to determine if Gordy was an appropriate candidate for surgery, which he was not. Id.

    On December 12, 2017, Dr. Nastanski performed the procedure. Id. ¶ 15. Dr. Nastanski's execution was flawed because he removed an excess amount of skin and used an improper tool. Id. Thus, the cadaver skin graft failed. Id. ¶ 16. Dr. Nastanski then recommended that Gordy undergo another skin graft operation using skin from his thigh, which Dr. Nastanski then performed on December 16, 2017. Id. ¶¶ 17, 18. By the time of Gordy's follow up appointment on December 26, 2017, Gordy's foot had become infected due to the improper skin graft procedure. Id. ¶ 19. However, Dr. Nastanski failed to recognize the seriousness of the infection and merely told Gordy to clean his foot with soap and water, and to apply an antibacterial cream. Id.

---

[1] Erroneously sued as "CareMore Health Plan, Inc." Mot., Docket No. 23-1, cover page.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-00048 JVS (JDEx) | Date | 5/15/2020 |
| Title | Paul Gordy v. CareMore Health Plan, et al | | |

On January 14, 2018, Gordy consulted with a physician who was not in CareMore's network, Dr. Mark Reed ("Dr. Reed"), a podiatrist specializing in surgery and wound care. Id. ¶ 20. Dr. Reed recommended emergency surgery that day because the skin graft had failed, and Gordy's foot had become gangrenous with extensive necrotic tissue, and that the wet gangrenous tissue had to be removed immediately. Id. Dr. Reed checked Gordy into PLH that day, and after performing surgical debridement the next morning, was able to stabilize the wound. Id.

CareMore would not authorize this surgery because it did not have Dr. Reed under contract. Id. ¶ 21. But CareMore did not have a doctor under contract who was qualified to perform the procedure, and instead sent a nurse to examine Gordy who acknowledged that the situation was "beyond her expertise," and that she could not help. Id. CareMore approved Gordy only for hyperbaric (oxygen) treatment, which would have been ineffectual. Id. ¶ 22. Thus, Gordy had no choice but to pay Dr. Reed out-of-pocket for the urgently necessary procedure. Id. On January 15, 2018, Dr. Reed performed the emergency debridement at PLH and was able to stabilize the wound. Id. ¶ 23. If Gordy and Dr. Reed had not overridden CareMore, Gordy's wet infected gangrene would have spread, and could have killed him. Id.

Following that surgery, Dr. Reed consulted with CareMore's hospitalist, Dr. Bhavesh Jansari ("Dr. Jansari"), about the necessary follow-up treatment. Id. ¶ 24. Dr. Reed and Dr. Jansari agreed that Gordy should receive a skin graft and that the surgery should be performed at a tertiary hospital such as USC for the best chance of success. Id. These recommendations were communicated to Dr. Holzner, Gordy's primary care physician, and a member of CareMore Medical Group's ("CMG") network of physicians who had sole authority to submit authorization requests on Gordy's behalf to OCGMC and CareMore. Id. On January 18, 2018, Gordy visited Dr. Holzner, but Dr. Holzner failed to recognize that Gordy required urgent specialty medical care to prevent his condition from worsening and requiring amputation. Id. ¶ 25.

On January 19, 2018, Gordy saw Dr. John Gambol ("Dr. Gambol") in PLH's wound care department who detected staphylococcus on the wound, agreed that Gordy should consult a reconstructive surgeon at a tertiary level of care without delay, and made a referral for Gordy to be seen by either Dr. Patel or Dr. David Armstrong ("Dr. Armstrong") at USC. Id. ¶ 26. The referral was communicated to Dr. Holzner who knew

JS - 6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-00048 JVS (JDEx) | Date | 5/15/2020 |
| Title | Paul Gordy v. CareMore Health Plan, et al | | |

it was his duty and responsibility to submit requests for referrals to specialists to CMG and CareMore, but failed to submit the request until after Gordy's leg was amputated in May 2018. Id. ¶¶ 27-30, 35. In March 2018, Dr. Reed performed another surgery on Gordy to remove dry gangrene from the wound and started Gordy on a course of Zyvox, an antibiotic, based on the medical recommendation of an infectious disease specialist. Id. ¶ 31. When the Zyvox ran out, CareMore did not authorize Gordy to renew the prescription and instead authorized a different drug for treatment. Id. ¶ 32. In April 2018, Gordy consulted with another non-CareMore doctor, Dr. Armstrong at USC. Id. ¶ 33. Dr. Armstrong sought to treat the leg, but CareMore would not authorize treatment without the referral from Dr. Holzner. Id. On May 5, 2018. Gordy was able to see Dr. Holzner again but by then, to prevent the gangrene from spreading, doctors amputated Gordy's lower leg. Id. ¶ 35.

The FAC alleges (1) a claim for breach of the duty of good faith and fair dealing against CareMore, (2) a claim for professional negligence against CareMore and CMG, and (3) a claim for medical negligence against OCGMC, Dr. Nastanski, and Dr. Holzner. Id. ¶¶ 37–62. CareMore and Gordy settled all claims against CareMore and on April 1, 2020, the claims against CareMore were dismissed with prejudice. See ECF Nos., 45, 46, 51, 53.

## II. LEGAL STANDARD

Removal jurisdiction is based entirely on federal statutory authority. See 28 U.S.C. §§ 1441–55. A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction." 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332(a)(1), federal courts have original jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States."

"Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant." GranCare, LLC v. Thrower, 889 F.3d 543, 548 (9th Cir. 2018) (citing Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)). Complete diversity "is determined (and must exist) as of the time the complaint is filed and removal is effected." Strotek Corp. v. Air Transp. Ass'n. of Am., 300 F.3d 1129, 1131–32 (9th Cir. 2002) (emphasis added) (citing Morongo Band of Mission Indians v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-00048 JVS (JDEx) | Date | 5/15/2020 |
| Title | Paul Gordy v. CareMore Health Plan, et al | | |

California State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988) (diversity is determined by citizenship of parties as of filing of the original complaint)); see also Newcombe v. Adolf Coors Co., 157 F.3d 686, 690 (9th Cir. 1998) (diversity must exist when the action is removed).

If the Court determines that it lacks subject matter jurisdiction in which a defendant has improperly removed the case, the Court must remand the case to state court. 28 U.S.C. § 1447(c); Fed. R. Civ. P 12(h)(3). However, if the claims which would support jurisdiction are no longer in the case, the Court has discretion whether to exercise jurisdiction over the remaining state claims under its supplemental jurisdiction. 28 U.S.C. § 1367.

### III. DISCUSSION

OCGMC moves to remand this action to state court on the grounds that Gordy and CareMore recently settled and all claims against CareMore have been dismissed with prejudice. Mot., 7. As a result, OCGMC argues that the remaining claims against the other Defendants arise solely under California state law and involve no federal claims. Id. Furthermore, because all parties are California residents no diversity jurisdiction exists. Id.

CareMore was the only party who was subject to the first cause of action for breach of the duty of good faith and fair dealing. It was under CareMore's claim that it was acting under the direction of a federal officer when engaging in the conduct that gave rise to the claim (making Medicare benefit determinations and administering Medicare benefits) that the Court found subject matter jurisdiction under the Federal Officer Removal Statute. See ECF No. 22. This cause of action having been dismissed, the only remaining claims are for professional (non-medical) negligence against CMG and medical negligence against OCGMC, Dr. Nastanski, and Dr. Holzner.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C.A. § 1447(c). While the Court may have had jurisdiction at the time of removal, there is presently no claim which supports federal question or diversity jurisdiction. At this early stage of the litigation with questions only under state law remaining, the Court declines to exercise its

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-00048 JVS (JDEx) | Date | 5/15/2020 |
| Title | Paul Gordy v. CareMore Health Plan, et al | | |

discretion to assume supplemental jurisdiction over those remaining state law claims under 28 U.S.C. § 1367.

Given that the Court declines to exercise supplemental jurisdiction, it declines to hear the motion to dismiss. That is now a matter for the state court.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to remand and declines to rule on the pending motion to dismiss. The Court further finds that oral argument would not be helpful on this matter and vacates the May 18, 2020, hearing. Fed. R. Civ. P. 78; L.R. 7-15.

**IT IS SO ORDERED.**

: 0

Initials of Preparer   lmb